IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Blue Ridge Emergency Physicians, P.A., | ) | C.A. No.: 6:10-cv-00428-JMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER AND OPINION |
| Emergency Physicians Insurance Company, RRG, a Nevada Captive Insurance Company, | ) ) ) | |
| | ) | |
| Defendant. | ) ) | |

This matter comes before the court on the motion of Emergency Physicians Insurance Company, RRG ("EPIC") to Compel Arbitration [Doc. 13]. The parties fully briefed the issues, and after reviewing the briefs, the court finds that oral argument will not aid in the decisional process. For the reasons that follow, the court denies the motion.

**I.     Factual and Procedural Background**

Plaintiff Blue Ridge Emergency Physicians, P.A. ("Blue Ridge"), a group of emergency room physicians, purchased malpractice insurance from Defendant EPIC in November 2004. As part of the purchase of insurance coverage from EPIC, Blue Ridge signed a Subscriber's Agreement, which provides "Subscriber has been given access to, and has read and agrees to be bound by the Governance Rules of EPIC, as amended from time to time by the Board of Governors (the "Governance Rules") . . . ." Subscriber's Agreement and Attorney in Fact at 1. [Doc. 3-12]. The Governance Rules, in turn, provide the following:

> Section 8.3. Dispute Resolution.
>
> Any dispute arising out of or by virtue of these Governance Rules or any other dispute involving a subscriber and EPIC or the Attorney-in-Fact shall first be submitted to the Attorney-in-Fact for resolution. If the Attorney-in-Fact and all parties agree that arbitration of the dispute is appropriate, or if the dispute is not otherwise amicably

1

> resolved, it shall be submitted to binding arbitration conducted in accordance with the rules of the American Arbitration Association. Such arbitration shall take place in Reno, Nevada, and Nevada law will govern all issues. The determination of the arbitrator(s) shall be conclusive and binding upon the parties, and any determination by the arbitrator(s) of an award may be filed with the clerk of a court of competent jurisdiction as a final adjudication of the claim involved, or application may be made to such court for judicial acceptance of the award and an order of enforcement, as the case may be. The arbitrator(s) shall designate the party to bear the expenses of the arbitrator(s) or the respective amounts of such expenses to be borne by each party.

Governance Rules at 8 [Doc. 13-3].

The Complaint alleges that Blue Ridge purchased "pre-funded tail coverage"[1] from EPIC, through its attorney-in-fact Epic Insurance Managers ("EIM"), and that Blue Ridge has paid $365,000 to EPIC since March 21, 2005 as a "Pre-Funded Tail premium." Compl. ¶¶15–18 [Doc. 1]. Blue Ridge alleges that when it decided in 2008 to place the funds elsewhere, EIM as EPIC's agent, refused to return the money. Compl. ¶¶ 34–37. EPIC denies that it provided pre-funded tail coverage to Plaintiff on the terms described by Plaintiff, or at all. Answer at ¶¶ 18–20; 66–68. EPIC further denies that it actually received any monies for a "Pre-Funded Tail premium."[2] Answer at ¶18.

## II.     Discussion

---

[1] Tail coverage provides additional insurance coverage for claims resulting from events that occur during the coverage period, but which are first reported during an extended reporting period, such as after a physician has left the practice. Compl. ¶ 11.

[2] EIM managed the operations of EPIC and was EPIC's attorney-in-fact. According to Blue Ridge, shortly after Blue Ridge's demand, EPIC filed suit in Nevada against EIM and others alleging, among other things, that they had stolen funds from it. The lawsuit alleged, for example, that, "[i]nstead of depositing premium[s] directly into EPIC's account [which EIM managed], EIM secretly deposited the premium[s] into its own account . . .," thereby stealing millions of dollars. (*See Emergency Physicians Ins. Co. v. EPIC Ins. Managers, Inc.*, C.A. No. A09594689-B (Nevada District Court, filed July 7, 2009). EPIC alleged two contract claims, as well as claims for racketeering, breach of fiduciary duties, conversion, unjust enrichment, and constructive trust. [Doc. 1-1].

EPIC argues the arbitration agreement is governed by the Federal Arbitration Act ("FAA"). The undersigned disagrees. The South Carolina Uniform Arbitration Act, S.C. Code Ann. 15-48-10 (1976) ("SCUAA") reverse preempts the FAA in this context under the McCarran-Ferguson Act, 15 U.S.C.A. §§ 1011-1015 (West 2009). The McCarran-Ferguson Act declares that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, . . . unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). "The McCarran-Ferguson Act thus precludes application of a federal statute in face of state law 'enacted . . . for the purpose of regulating the business of insurance,' if the federal measure does not 'specifically relat[e] to the business of insurance,' and would 'invalidate, impair, or supersede' the State's law." *Gross v. Weingarten,* 217 F.3d 208, 222 (4th Cir. 2000) (quoting *Humana, Inc. v. Forsyth*, 525 U.S. 299, 307 (1999)).

The state law at issue is the SCUAA's provision that "[t]his chapter however shall not apply to . . . any insured or beneficiary under any insurance policy or annuity contract." S.C. Code Ann. § 15-48-10(b)(4) (West 2005). In order to reverse preempt, S.C. Code Ann. § 15-48-10(b)(4) must have been "enacted for the purpose of regulating the business of insurance." 15 U.S.C. § 1012(b). The South Carolina Court of Appeals has addressed this precise question and concluded that S.C. Code Ann. § 15-48-10(b)(4) was a state law enacted for the purpose of regulating the business of insurance and therefore "reverse preempts" the FAA through application of the McCarran-Ferguson Act. *Cox v. Woodmen of the World Ins. Co.*, 347 S.C. 460, 463, 556 S.E.2d 397, 399–402 (Ct. App. 2001); *see also Am. Health and Life Ins. Co. v. Heyward*, 272 F. Supp. 2d 578, 581–583 (D.S.C. 2003). The decision in *Cox* makes it clear that S.C. Code Ann. § 15-48-10(b)(4) was enacted for the purpose of regulating insurance, and

3

therefore, reverse preempts the FAA. Thus, absent some exception,[3] S.C. Code Ann. § 15-48-10(b)(4) prohibits the enforcement of arbitration clauses in insurance policies under South Carolina law.

### III. Conclusion

For the foregoing reasons, the EPIC's motion to compel arbitration [Doc. 13] is denied.

**IT IS SO ORDERED**.

s/J. Michelle Childs  
United States District Judge

Greenville, South Carolina  
March 15, 2011

---

[3] The *Cox* court found that the arbitration clause at issue in that case was nevertheless exempted from the scope of § 15-48-10(b)(4) because the South Carolina legislature had separately provided that the general insurance laws of South Carolina did not apply to fraternal benefits associations like the *Cox* defendant. *See Cox*, 347 S.E.2d at 402. Here, there is no such exception in South Carolina law for risk retention groups such as EPIC.